UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA ex rel. JOHN DOE,

Plaintiff,

v.

COLUMBIA UNIVERSITY IN THE CITY OF NEW
YORK,

Defendant.

_____

13 CV  5028(PAE)

**Filed under seal pursuant to
31 U.S.C. § 3730(b)(2)**

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## OVERVIEW

1.      This is a civil action by JOHN DOE ("RELATOR"), whose true identity has been provided to the United States Attorney's Office for the Southern District of New York, on his own behalf, and on behalf of the United States of America, against defendant COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK ("COLUMBIA UNIVERSITY") under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA"), for treble damages, civil penalties, and other relief arising from COLUMBIA UNIVERSITY's improper claims for, and receipt and retention of, monetary payments from the United States.

2.      More specifically, from at least as early as 2008 through the present, COLUMBIA UNIVERSITY has been improperly seeking, receiving and retaining excessive payments from the United States for indirect costs (sometimes called "facilities and administrative," "F&A" or "overhead" costs) in connection with Government sponsored and funded medical research grants.

3.      Under Government regulations, as well as, pursuant to agreements between them, the United States reimburses COLUMBIA UNIVERSITY for indirect costs incurred for medical research conducted at off-site locations at significantly lower rates than it does for research performed at on-site facilities.

4.      Generally, when more than 50% of its medical research is conducted off-site (sometimes referred to as "Off-Campus") the United States reimburses COLUMBIA UNIVERSITY for indirect costs at a rate of 26% of the total direct costs associated with the grant project.   When more than 50% of its medical research is performed on-site (sometimes referred to as "On-Campus"), the United States reimburses COLUMBIA UNIVERSITY for indirect costs at a rate of 60% of the total direct costs.

5.      COLUMBIA UNIVERSITY has unlawfully obtained indirect cost overpayments from the United States by, among other things, submitting grant applications to the United States which include budget amounts for indirect costs calculated at an on-site rate, when, as COLUMBIA UNIVERSITY employees, agents and representatives well knew, more than 50% of the research would be, and in fact has been, conducted at off-site locations.

6.      As a result of misclassifying its medical research as being done at on-site locations --rather than at off-site ones-- COLUMBIA UNIVERSITY has falsely and fraudulently sought, obtained and retained millions of dollars in Government grant overpayments, the precise amount of which will be determined at trial.

## PARTIES AND ENTITIES

7.      The United States, through the Department of Health and Human Services ("HHS"), is the real party-plaintiff in interest in this action.  HHS's headquarters are located at

200 Independence Avenue S.W., Washington, D.C., 20201.  HHS also maintains a Northeastern Field Office at 26 Federal Plaza, Room 41-122, New York, New York, 10278.

8.      Among other things, HHS provides grant funding for medical research by academic institutions of higher learning through the National Institutes of Health ("NIH').  NHI is the largest source of funding for medical research in the world.  Its principal office is located at 9000 Rockville Pike, Bethesda, Maryland, 20892.  NIH is made up of 27 institutes and centers, each with a specific research agenda, often focusing on a particular disease or body system.

9.       The National Institute of Mental Health ("NIMH") is one of the 27 NIH research institutes and centers.  NIMH's principal address is 6001 Executive Boulevard, Room 6200, MSC 9663, Bethesda, Maryland, 20892-9663.

10.     RELATOR is a natural person who currently resides in the State of New York.  At times relevant to this complaint, RELATOR is, or was, an employee of COLUMBIA UNIVERSITY.

11.     COLUMBIA UNIVERSITY is a multi-campus, post-secondary academic institution for higher learning and research, headed by a president and governed by a board of trustees and university senate.  Its principal administrative offices are located at 535 West 116th Street, New York, New York, 10027.  COLUMBIA UNIVERSITY also maintains business offices located at 615 West 131st Street, New York, New York, 10027, where various administrative functions for Government sponsored grants are performed.

12.     COLUMBIA UNIVERSITY has a medical school, known as the Columbia University College of Physicians and Surgeons.  The medical school is located at 630 West 168th Street, New York, New York, 10032.

13.     Within the Columbia University College of Physicians and Surgeons is the Columbia University Department of Psychiatry (the "Psychiatry Department").  Among other things, members and associates of the Psychiatry Department, often referred to as "Principal Investigators" or "PIs," regularly apply for and receive HSS/NIH-sponsored medical research grant monies under either primary contracts with NIH or sub-contracts with other institutions that have contracted with NIH for medical research grants, including, the New York State Research Foundation for Mental Hygiene, as well as, various other universities and higher educational institutions.  Most of the aforementioned HHS/NIH grants are from the NIMH.

14.     With minor exceptions, nearly all of the HHS/NIH-funded medical research which the Psychiatry Department's PIs conduct is, and has been, physically performed by them at one of two off-site locations that are owned and operated by New York State's Office of Mental Health ("OMH") through its New York State Psychiatric Institute (sometimes referred to as "NYSPI" or the "Institute").  These two off-site locations are: (1) the Lawrence Kolb Research Laboratory, located at located at 722 West 168th Street/40 Haven Avenue, New York, New York, 10032 (the "Kolb Annex"); and (2) the New York State Psychiatric Institute Riverside Drive Building (also known as the Herbert Pardes Building), located at 1051 Riverside Drive New York, NY 10032 (the "Pardes Building").

15.     Upon information and belief, COLUMBIA UNIVERSITY does not pay rent to OMH or the New York State Psychiatric Institute for COLUMBIA UNIVERSITY's use of the Kolb Annex and Pardes Building.  Nor, upon further information and belief, does COLUMBIA UNIVERSITY pay any utilities or other costs associated with operating or using these two buildings.

**JURISDICTION AND VENUE**

16.     The court has subject matter jurisdiction over the FCA claims alleged in this complaint under 28 U.S.C. §§ 1331 (federal question) and 1345 (United States as plaintiff), as well as, 31 U.S.C. § 3732(a) (False Claims Act).

17.     The court has personal jurisdiction over COLUMBIA UNIVERSITY pursuant to 31 U.S.C. § 3732(a) because COLUMBIA UNIVERSITY can be found, resides, or transacts business in this district.  Section 3732(a) further provides for service of process at any place within or outside the United States.

18.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because COLUMBIA UNIVERSITY can be found, resides, and transacts business in this district; an act proscribed by 31 U.S.C. § 3729 occurred within this district; and a substantial part of the events or omissions giving rise to the claims alleged in this complaint occurred in this district.

**FCA SUBJECT MATTER JURISDICTION**

19.     Upon information and belief, none of the subject matter or other jurisdictional bars set forth in the FCA is applicable to this action.

20.     Upon information and belief, prior to any "public disclosure" (as defined by the FCA), RELATOR voluntarily disclosed to the United States Attorney's Office for the Southern District of New York the information on which the allegations or transactions in this complaint are based.

21.     Through his employment at COLUMBIA UNIVERSITY, RELATOR is an "original source" of the information on which his allegations are based, within the meaning of the FCA.

22.     Prior to filing this action, RELATOR voluntarily disclosed to the United States Attorney's Office for the Southern District of New York the information on which the allegations or transactions in his complaint are based.

## LIABILITY UNDER THE FCA

23.     The FCA provides that a person is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus three times the amount of damages which the Government sustains because of an act of that person, if, among other things, the person knowingly: (1) submits a false or fraudulent claim to the United States; (2) makes a false statement or uses a false record material to a false or fraudulent claim to the United States; or (3) retains funds that the person knows are owed to United States.

## APPLICABLE REGULATION: OMB CIRCULAR NO. A-21

24.     The United States Office of Management and Budget issued Circular No. A-21 (Revised May 10, 2004), which establishes principles for determining costs applicable to grants, contracts and other agreements with "educational institutions."   Circular No. A-21 is an overarching regulation that establishes grant funding and negotiating practices between federal agencies and education institutions, generally.   The circular governs COLUMBIA UNIVERSITY's reimbursement rate for indirect costs (referred to in the circular as "Facilities and Administrative" costs or "F&A" costs) for HHS/NIH sponsored medical research grants, specifically.

25.     HHS is the "cognizant federal agency" for COLUMBIA UNIVERSITY within the meaning of Circular No. A-21.  As such, HHS is responsible for negotiating F&A cost

reimbursement rates with COLUMBIA UNIVERSITY, subject to the principles set forth in Circular No. A-21.

26.    COLUMBIA UNIVERSITY is an "educational institution" within the meaning of Circular No. A-21.

27.    According to Circular No. A-21, "F&A costs are those that are incurred for common or joint objectives and therefore cannot be identified readily and specifically with a particular sponsored project, an institutional activity, or any other institutional activity."  The "facilities" component of F&A costs refers to depreciation and use allowances for real property, as well as interest on debt associated with certain buildings, equipment and capital improvements, operation and maintenance expenses and library expenses.  The "administrative" component refers to general administration and general expenses, departmental administration, sponsored projects administration, student administration and services, and all other types of expenditures not covered specifically under the definition of facilities costs, such as the salaries of administrative and clerical staff, office supplies, postage, local telephone charges and membership fees.

28.    Under the principles set forth in Circular A-21, COLUMBIA UNIVERSITY is not permitted to receive "facilities" costs reimbursements for research its PIs, employees, agents and representatives perform at the Kolb Annex and Padres Building.

**COLUMBIA UNIVERSITY'S RATE AGREEMENTS WITH HHS FOR F&A COSTS**

29.    At all times relevant to this complaint, COLUMBIA UNIVERSITY operated under written agreements executed with representatives of HHS' Northeastern Field Office that established, among other things, the rates at which COLUMBIA UNIVERSITY was to be

reimbursed for indirect costs associated with HHS/NIH sponsored medical research grants (the "Rate Agreements").

30. The most recent Rate Agreement between COLUMBIA UNIVERSITY and HHS has an effective date of 07/18/2012 (the "July 18, 2012 Rate Agreement").

31. The July 18, 2012 Rate Agreement provides that, for the periods July 1, 2012 to June 30, 2014, COLUMBIA UNIVERSITY's indirect cost rate for "On-Campus" (i.e., on-site) research is 60.0%; its rate for "Off-Campus" (i.e., off-site) research is 26.0%; and its rate for "Modified Off-Campus" research is 29.4%.

32. According to the July 18, 2012 Rate Agreement, "For all activities within a 50 mile radius of the campus and performed in facilities not owned by the institution [i.e., COLUMBIA UNIVERSITY] and to which rent is directly allocated to the project, the off-campus modified rate will apply."

33. The July 18, 2012 Rate Agreement further provides that, "Grants or contracts will not be subject to more than one indirect cost rate. *If more than 50% of a project is performed off-campus, the appropriate off-campus rate will apply to the entire project*." (Emphasis added.)

34. A similar rate agreement was entered into between COLUMBIA UNIVERSITY and HHS with an effective date of June 4, 2008 (the "June 4, 2008 Rate Agreement"). It has the same terms as the July 18, 2012 Rate Agreement with respect to facilities and administrative cost rates, except that, for the period 07/01/07 to 06/30/08, the On-Campus F&A reimbursement rate for research is 61.0%, for the period 07/01/08 to 06/30/10, the On-Campus rate is 60.3%, for the period 07/01/10 to 06/30/11, the On-Campus rate is 61.0%, for the period 07/01/07 to 06/30/11, the Off-Campus rate is 26.0%, and for the period 07/01/07 to 06/30/11, the Modified Off-Campus rate is 29.4%.

35.     During all times relevant to this complaint, there were other Rate Agreements between COLUMBIA UNIVERSITY and HHS, including, one dated June 19, 2007, and another dated February 1, 2012.  Upon information and belief, the F&A cost reimbursement provisions in all of the Rate Agreements are substantially, and materially, the same.

## FACTUAL ALLEGATIONS

### General Factual Allegations re Department of Psychiatry

36.     Since at least 2008, COLUMBIA UNIVERSITY's Department of Psychiatry has applied for, been awarded and has received approximately $20 million annually as a primary grantee for HHS/NIH sponsored medical research grants.

37.     Additionally, during this same time period, the Psychiatry Department has applied for, been awarded and has received approximately $10 million annually as a sub-contractor (or sub-grantee) for HHS/NIH sponsored medical research grants that were awarded to other non-profit organizations (mainly, the New York State Research Foundation for Mental Hygiene) and other higher educational institutions.

38.     In virtually all of the above-referenced HHS/NIH medical research grant and sub-grant applications on behalf of the Psychiatry Department, COLUMBIA UNIVERSITY sought and was awarded the On-Campus rate for reimbursements for indirect costs.  And, COLUMBIA UNIVERSITY received payments from HHS/NIH commensurate with the On-Campus rates for these grant and sub-grant awards.

39.     In nearly every instance referred to above, almost all of the research for the HHS/NIH sponsored medical research grants awarded to PIs at the Psychiatry Department (as either a primary grantee or sub-grantee) was conducted Off-Campus at either the Kolb Annex and/or the Pardes Building and not at COLUMBIA UNIVERSITY's On-Campus locations.

9

40.     With respect to all of its HHS/NIH sponsored grants and sub-grants for medical research that were conducted at the Kolb Annex or the Pardes Building, COLUMBIA UNIVERSITY should have applied for and received the Off-Campus reimbursement rate for indirect costs and not the higher On-Campus rate.

41.     COLUMBIA UNIVERSITY was not even entitled to the Modified Off-Campus rate because it did not pay rent to New York State for the use of the Kolb Annex or the Pardes Building.

42.     Accordingly, with respect to each of the above-referenced HHS/NIH sponsored medical research grants and sub-grants to PIs affiliated with the Psychiatry Department, COLUMBIA UNIVERSITY falsely and fraudulently applied for, received and has retained overpayments for indirect costs.

43.     The amount of the overpayments is determined by applying the appropriate Off-Campus rates for F&A costs in the corresponding Rate Agreements between COLUMBIA UNIVERSITY and HHS and then subtracting that amount from the payments COLUMBIA UNIVERSITY actually received by improperly using the On-Campus rates for F&A costs.

44.     RELATOR estimates that the combined overpayments to COLUMBIA UNIVERSITY for F&A costs for primary and sub-grants from HHS/NIH for medical research is approximately $3 million annually.

45.     Prior to reporting the substance of his allegations to the United States, and before filing this complaint, RELATOR brought the core information on which his complaint is based to the attention high-ranking COLUMBIA UNIVERSITY officials, in an unsuccessful effort to stop COLUMBIA UNIVERSITY from improperly billing the Government for excess indirect costs on HHS/NIH medical research grants.  These COLUMBIA UNIVERSITY officials were:

10

Avalon Lance (Vice Chairman of Finance and Administration); and Moira Rynn (Interim Head of the Division of Child and Adolescence Psychiatry).   Both of these people agreed with RELATOR that COLUMBIA UNIVERSITY had been, and was, improperly seeking and obtaining indirect cost overpayments on the HHS/NIH medical research grants by misclassifying the location where the research was being performed (that is, On-Campus versus Off-Campus).

46.     Notwithstanding RELATOR's alerts about F&A cost overpayments, COLUMBIA UNIVERSITY did not alter, and has not altered, its HHS/NIH grant application policies or practices.   Nor, upon information and belief, has COLUMBIA UNIVERSITY refunded any money to the United States for prior indirect cost overpayments that it has received as a result of misclassifying the location where medical research was being performed.

47.     Thus, RELATOR has direct evidence that COLUMBIA UNIVERSITY's false and fraudulent conduct was, and continues to be, done knowingly.

### Specific Representative Examples re Department of Psychiatry

48.     As a first illustrative example, on or about July 24, 2012, NIH (National Institute of Mental Health) awarded grant number 5R01MH064092-08 REVISED to Psychiatry Department PI Anne Marie Ablano, PhD, in the amount of $119,546 per year for four (additional) years, which was comprised of $74,252 per year in direct costs and $45,294 per year in F&A costs (61.0% of direct costs).   More than 50% of the research for this grant is or was performed at the Kolb Annex and/or the Pardes Building.

49.     As a second example, on or about September 21, 2011, NIH (National Institute of Mental Health) awarded grant number 1R01MH093677-01A1 to Psychiatry Department PI Catherine E. Monk, PhD, and Bradley S. Peterson, MD, in the amount of $720,002 for the first year of a five year contract, which was comprised of $423,791 for the first year in direct costs  as

11

the F&A cost base and $254,275 for the first year in F&A costs (60.0% of direct costs). More than 50% of the research for this grant is or was performed at the Kolb Annex and/or the Pardes Building.

50.     As a third example, on or about August 19, 2011, NIH (National Institute of Mental Health) awarded grant number 1R034MH091320-01A1 to Psychiatry Department PI Laura H. Mufson, PhD, and Moira Ann Rynn, MD, in the amount of $200,000 for the first year of a three year contract, which was comprised of $125,000 in the first year for direct costs and $75,000 in the first year for F&A costs (60.0% of direct costs). More than 50% of the research for this grant is or was performed at the Kolb Annex and/or the Pardes Building.

51.     As further illustrative examples, similar instances of overpayments for F&A costs occurred with respect to the following NIH (National Institute of Mental Health) sponsored grants that were awarded to various Psychiatry Department PIs (identified by grant number):

a.     5R01MH081968-05.

b.     5R01MH067068-10.

c.     5R21MH091276-02.

d.     3U01MH092250-03S2.

e.     5U01MH092250-03.

f.     5R21MH092665-02.

g.     5R21MH091470-02.

h.     5R01MH060783-09.

i.     5R01MH061399-11.

j.     5R01MH093672-03.

k.     5R21MH096132-02.

l. 5R01MH040695-21.

m. 5R01DA027777-04.

n. 5R01MH093637-03.

o. 5R01MH092580-03.

p. 5R34MH091320-03.

q. 5R01MH048514-20.

r. 5R01MH087758-04.

s. 5R01MH060387-13.

t. 1R21AG44260-01A1.

u. 5R01MH081107-06.

v. 5R01MH081107-06.  And,

w. 5R21MH093936-02.

52.     Illustrative examples of NIH medical research grants awarded to other institutions and sub-contracted to PIs affiliated with the Psychiatry Department, which likewise resulted in overpayments for F&A costs because COLUMBIA UNIVERSITY improperly used the higher On-Campus rate when it should have used the lower Off-Campus rate in its applications and budgets, include the following grants:

a.     5R01MH096334-02 (awarded to University of Pittsburg and subcontracted to Psychiatry Department).

b.     Lithium in the Treatment of Pediatric Mania (awarded to Case Western Reserve University and subcontracted to Psychiatry Department PI Moira A. Rynn).

13

c.      Blunted and Discordant Affect Syndrome: A transdiagnostic construct in Psychopathology (awarded to Western Psychiatric Institute and Clinic and subcontracted to Psychiatry Department PI Bradley Peterson, MD).

d.      01R01MH085150-01A1 (awarded to the New York State Research Foundation for Mental Hygiene and subcontracted to Psychiatry Department PI J. Blake Turner).  And,

e.      Other grants awarded to the New York State Research Foundation for Mental Hygiene and subcontracted to Psychiatry Department PIs, including, but not limited to, the following grants (identified by COLUMBIA UNIVERSITY's Project ID #): GG005770, GG009060, GG010017, GG003026, GG001289, and GG003169.

### Factual allegations re Department of Neuroscience

53.     Columbia University's Department of Neuroscience (the "Neuroscience Department") is a basic science department within Columbia University's College of Physicians and Surgeons at the Columbia University Medical Center.  Among other things, Principal Investigators and/or other members and associates from the Neuroscience Department regularly apply for and receive HSS/NIH-sponsored medical research grant monies under either primary contracts with NIH or sub-contracts with other institutions that have contracted with NIH for medical research grants, including, the New York State Research Foundation for Mental Hygiene, as well as, various other universities and higher educational institutions.

54.     A large percentage of the HHS/NIH-funded medical research which the Neuroscience Department's PIs and other agents conduct is, and has been, physically performed by them off-campus at either the Kolb Annex or the Pardes Building.

55.     In those instances where Neuroscience Department research was done off-campus at either the Kolb Annex or the Pardes Building, COLUMBIA UNIVERSITY submitted grant

14

and sub-grant applications to HHS/NIH using the On-Campus rate for reimbursements for indirect costs.

56.     As a result of including the On-Campus rate in Neuroscience Department grant and sub-grant applications, COLUMBIA UNIVERSITY knowingly and improperly received grant payments from HHS/NIH commensurate with the On-Campus rates for indirect costs for research performed off-campus.

57.     Illustrative examples of the forgoing misconduct occurred with respect to the following NIH  sponsored grants awarded to various Neuroscience Department PIs and agents (identified by grant number):

a.     5R01NS069679.

b.     5R01MH059244.

c.     5R01EY014978.

d.     5R01MH098039.

e.     3R01DA024001.  And,

f.     2R01MH082017.

## COUNTS

## COUNT I

**FCA VIOLATIONS PRIOR TO MAY 20, 2009**
**(31 U.S.C. § 3729(a)(1), (2) and (7))**

58.     Relator realleges all the allegations in this complaint as if fully set forth herein.

59.     This is a claim for treble damages and penalties under the FCA prior to its May 20, 2009 amendment.

60.     Through the acts described above and otherwise, Columbia University, by and through its agents and employees knowingly presented, or caused to be presented, to an officer

15

or employee of the United States Government a false or fraudulent claim for payment or approval; knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; and knowingly made, used, or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, in violation of the FCA, 31 U.S.C. § 3729(a)(1), (2) and (7) [pre- May 20, 2009 amendment].

61.     Upon information and belief, the Government was unaware of the falsity of the records, statements, and claims made or submitted by COLUMBIA UNIVERSITY.

62.     Upon information and belief, the false and fraudulent representations and claims COLUMBIA UNIVERSITY made to the Government were material to the Government's decisions to make payments to COLUMBIA UNIVERSITY.

63.     Upon information and belief, had the Government known of the false or fraudulent nature of COLUMBIA UNIVERSITY's representations and claims, it would not have made the payments to COLUMBIA UNIVERSITY.

64.     By reason of COLUMBIA UNIVERSITY's violations of the FCA, the United States has suffered economic loss.

**COUNT II**

**FCA VIOLATIONS ON OR AFTER MAY 20, 2009**
**(31 U.S.C. §§ 3729(a)(1)(a), (b), and (g))**

65.     Relator realleges all the allegations in this complaint as if fully set forth herein.

66.     This is a claim for treble damages and penalties under the FCA as amended on May 20, 2009.

67.     Through the acts described above and otherwise, Columbia University, by and through its agents and employees knowingly presented, or caused to be presented, a false or

fraudulent claim for payment or approval; knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim; and knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the FCA, . 31 U.S.C. §§ 3729(a)(1)(a), (b), and (g) [May 20, 2009 amendment].

68. Upon information and belief, the Government was unaware of the falsity of the records, statements, and claims made or submitted by COLUMBIA UNIVERSITY.

69. Upon information and belief, the false and fraudulent representations and claims COLUMBIA UNIVERSITY made to the Government were material to the Government's decisions to make payments to COLUMBIA UNIVERSITY.

70. Upon information and belief, had the Government known of the false or fraudulent nature of COLUMBIA UNIVERSITY's representations and claims, it would not have made the payments to COLUMBIA UNIVERSITY.

71. By reason of COLUMBIA UNIVERSITY's violations of the FCA, the United States has suffered economic loss.

### PRAYER FOR RELIEF

WHEREFOR, RELATOR, on behalf of himself, and on behalf and in the name of the United States, demands judgment against COLUMBIA UNIVERSITY as follows:

A. Ordering COLUMBIA UNIVERSITY to cease and desist from violating the FCA, 31 U.S.C. §§ 3729 *et seq*.

B. On Counts I and II, a money judgment against COLUMBIA UNIVERSITY in the amount of three times the damages the United States has sustained because of COLUMBIA

17

UNIVERSITY's actions, plus a civil penalty of $11,000 for each act by COLUMBIA UNIVERSITY in violation of the FCA, as provided by 31 U.S.C. § 3729(a).

C.      Awarding RELATOR the maximum relator's share available under the FCA, for bringing Counts I and II, namely, 25 percent of the proceeds of the action by judgment or settlement of the claim if the Government intervenes in the matter (or pursues its claim through any alternate remedy available to the Government, 31 U.S.C. § 3730(c)(5)), or, alternatively, 30 percent of the proceeds of the action by judgment or settlement of the claim, if the Government declines to intervene, as provided in 31U.S.C. § 3730(d).

D.      Awarding RELATOR all reasonable expenses that were necessarily incurred in prosecuting this action, plus all reasonable attorneys' fees and costs, as provided by 31 U.S.C. § 3730(d).

E.      Interest on money judgments, as provided by law. And,

F.      For such other relief for the United States and RELATOR as the Court deems appropriate.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, RELATOR hereby demands trial by jury.

Dated: New York, New York
         December 19, 2013

McINNIS LAW

By:  /s/Timothy J. McInnis
Timothy J. McInnis [7151]
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel:(212) 292-4573
Fax: (212) 292-4574
Email: tmcinnis@mcinnis-law.com
 *Attorneys for Relator John Doe*